IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| XPO CNW, INC.,<br>a Delaware corporation<br>(formerly Con-way Inc.),<br><br>and<br><br>XPO LOGISTICS FREIGHT, INC.,<br>a Delaware corporation<br>(formerly Con-way Freight, Inc.),<br><br>        Plaintiffs,<br><br>    vs.<br><br>R & L CARRIERS, INC.,<br>an Ohio corporation,<br><br>and<br><br>JAMES MATTHEWS, an individual,<br><br>and<br><br>SHAWN THACKRAY, an individual,<br><br>and<br><br>JILL LANGLEY, an individual,<br><br>        Defendants. | Civil Action No. _____<br><br>JURY TRIAL REQUESTED |

_____

## COMPLAINT AND JURY DEMAND

Plaintiffs, XPO CNW, Inc. (formerly Con-way Inc.) and XPO Logistics Freight, Inc. (formerly Con-way Freight, Inc.) (collectively "Con-Way" or "Plaintiffs"), by their counsel, Dykema Gossett PLLC, state as follows, for their complaint against Defendants R & L Carriers, Inc., James Matthews, Shawn

Thackray and Jill Langley:

## JURISDICTION AND VENUE

1.    This civil action asserts claims for trademark infringement and a violation of the Anti-Cybersquatting Consumer Protection Act, arising under the Federal Trademark Act, 15 U.S.C. § 1051 *et seq.*; misappropriation of trade secrets, arising under the statutes of the State of Michigan; and unfair competition, breach of contract and tortious interference with a contract, arising under the common law of the State of Michigan.  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

2.    This Court has subject matter jurisdiction under Section 39 of the Federal Trademark Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332(a), (b) and (c), 1338(a).

3.    This Court has supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims set forth in the complaint that they form part of the same case or controversy.  Further, this Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2

4.     Plaintiff XPO CNW, Inc. (formerly Con-way Inc. and hereinafter "Con-way Inc." or "Plaintiff Con-way Inc.") is a Delaware corporation having its principal office at 2211 Old Earhart Road, Ann Arbor, MI 48105.  Con-way Inc. offers national freight transportation, logistics and supply chain management services to customers across numerous industries.

5.     Plaintiff XPO Logistics Freight, Inc. (formerly Con-way Freight, Inc. and hereinafter "Con-way Freight" or "Plaintiff Con-way Freight") is a Delaware corporation having its principal office at 2211 Old Earhart Road, Ann Arbor, MI 48105.   Con-way Freight offers national less-than-truckload ("LTL") freight transportation services to customers across numerous industries.

6.     Plaintiff Con-way Inc. is the owner of the CON-WAY trademarks, CON-WAY   and   CON-WAY   FREIGHT,   for   uses   in   conjunction   with transportation and delivery services, and has used said trademarks in the United States in connection with said services since at least as early as 1999 for the CON-WAY mark and as early as 2013 for the CON-WAY FREIGHT mark.

7.     Defendant R & L Carriers, Inc. (hereinafter "R&L" or "Defendant R&L") is an Ohio corporation with a principal place of business at 600 Gilliam Road, Wilmington, OH 45177.   Defendant R&L offers national freight, transportation, logistics and supply chain management services to customers

3

across numerous industries in direct competition with Con-way.

8.    Defendant James Matthews (hereinafter "Defendant Matthews") resides at 16 Lambs Ln., Jonestown, PA 17038. Defendant Matthews is a former employee of Con-way Freight, then working as an Account Executive.

9.    Defendant Shawn Thackray (hereinafter "Defendant Thackray") resides at 1339 Wheatland Ave, Pennsburg, PA 18073. Defendant Thackray is a former employee of Con-way Freight, then working as an Account Executive.

10.    Defendant Jill Langley (hereinafter "Defendant Langley") resides at 501 Sunrise Canyon, Apt. 5205, Universal City, TX 78148. Defendant Langley is a former employee of Con-way Freight, then working as an Account Executive.

11.    Diversity exists in that Plaintiffs are citizens of Delaware and Michigan, and Defendants are citizens of Ohio, Pennsylvania and Texas.

12.    The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees, as this matter involves the misappropriation of confidential information concerning customers of Con-way for whom the annual revenue far exceeds $75,000.00.

13.    This Court has personal jurisdiction over Defendant R&L because Defendant R&L conducts business in this Judicial District, has committed violations of the Federal Trademark Act and Michigan statutory and common law,

4

and has otherwise caused injury within this Judicial District.

14.     This Court has personal jurisdiction over Defendants Matthews, Thackray and Langley (the "Individual Defendants") because they each individually signed Employee Nondisclosure Agreements with Con-way, wherein they consented to the exclusive jurisdiction and venue of the state and federal courts located in Washtenaw County, Michigan and agreed to waive all objections to personal jurisdiction, venue and forum non conveniens.

15.     Moreover, this Court has personal jurisdiction over the Individual Defendants because they have committed violations of Michigan statutory law within this Judicial District and/or have caused injury within the State of Michigan.

16.     Venue properly lies in this district under 28 U.S.C. §§ 1391(b)-(d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this Judicial District.  Moreover, Defendant R&L conducts business in this Judicial District and Defendants Matthews, Thackray and Langley each individually signed Employee Nondisclosure Agreements with Con-way, wherein they consented to the exclusive jurisdiction and venue of the state and federal courts located in Washtenaw County, Michigan and agreed to waive all objections to personal jurisdiction, venue and forum non conveniens.

5

## FACTS COMMON TO ALL CAUSES OF ACTION

17.    On October 30, 2015, XPO Logistics, Inc. announced the closing of its acquisition of the Con-way Inc. family of companies.

18.    On or about November 1, 2015, Defendant R&L, without authorization or approval of Con-way, launched the Website "www.conwaylayoff.com" (the "Website") for the explicit purpose of raiding Plaintiffs' employees and enticing them to leave its employ and seek job opportunities with Defendant R&L.   The Website included the registered trademarks of Con-way, and specifically targeted all Con-way employees.

19.    On November 3, 2015, R&L issued a press release announcing the launch of the authorized Website, and indicating its intention to target Con-way's employees.  A copy of the press release is attached as Exhibit A.

20.    On or about November 3, 2015, through November 6, 2015, Defendant R&L slightly modified the appearance and content of the unauthorized Website, but continued to use Con-way's trademarks for the purpose of soliciting Plaintiffs' employees to leave the employ of Con-way and seek job opportunities with Defendant R&L.

21.    On November 4, 2015, Truckers News, a national publication concerning the freight industry, reported the creation and post of the Website

"www.conwaylayoff.com", increasing the potential viewership of the Website and Defendant R&L's use of Con-way's trademarks. A copy of the article is attached as Exhibit B.

22.    On November 5, 2015, through their attorneys, Plaintiffs sent Defendant R&L a letter demanding Defendant remove the Website and cease and desist all raiding, targeting and other solicitation of Plaintiffs' employees through unlawful means or for unlawful purposes. A copy of the letter is attached as Exhibit C.

23.    Defendant R&L did not respond to the cease and desist letter, but, on or about November 6, 2015, it removed the Website.

24.    Notwithstanding the November 5, 2015 cease and desist letter, the raiding of the employees of Con-way by Defendant R&L continued.

25.    To date, based on information and belief, the raiding and improper actions of Defendant R&L through, among other things, the unauthorized Website, has resulted in at least eight Con-way Freight employees resigning their employment with Con-way and becoming employed at Defendant R&L.

26.    Defendant R&L has unlawfully solicited and hired Con-way employees from across the nation, including:  Lonnie Engle, an Account Executive from Colorado; Jeff Trolia, an Account Executive from Illinois; Richard Blume, an

Account Executive from Indiana; Joseph Rosczuk, an Account Executive from Ohio; Matthew Kohn, a National Account Executive from Pennsylvania; James Matthews, an Account Executive from Pennsylvania; Shawn Thackray, an Account Executive from Pennsylvania; and Jill Langley, an Account Executive from Texas.

27.    In addition, Con-way's investigation to date has revealed that some of the employees solicited and hired by Defendant R&L have misappropriated the confidential and proprietary trade secret information of Con-way Including pricing and customer relationship information.

## COUNT I
## TRADEMARK INFRINGEMENT

28.    Plaintiff Con-way Inc. and Plaintiff Con-way Freight incorporate by reference the allegations of all prior paragraphs as if set forth in fully herein.

29.    Defendant R&L committed trademark infringement under § 32(1) of the Federal Trademark Act, 15 U.S.C. § 1114(1).

30.    Plaintiffs adopted and commenced use of the trademarks CON-WAY and CON-WAY FREIGHT (hereinafter "the CON-WAY trademarks") for transportation and delivery services.  Con-way has continuously used the CON-WAY trademarks in conjunction with transportation and delivery services in

8

interstate commerce and in Michigan since at least September 1999 and February 2013 respectively.

31.    At the present time, Con-way offers its customers LTL transportation services across the country.  Con-way's services were prominently advertised on the Internet via its Website at "www.conway.com" as well as alongside all of its freight trailers, which bore the CON-WAY trade name and trademark.

32.    Beginning in 1999, the advertising and sales of Con-way's services under the CON-WAY trademarks and domain name have been significant.

33.    As a result of the significant advertising, sales and maintenance of premium quality standards relating to the CON-WAY trademarks, they have become favorably known to the public, to LTL transportation services consumers and to the employees of the freight shipping industry as a distinctive indication of the origin of Con-way's services.

34.    Con-way duly registered the mark CON-WAY, for transportation and delivery services, in the United States Patent and Trademark Office under Registration No. 2,278,192, which issued September 14, 1999, and duly renewed on October 22, 2009.

35.    Con-way duly registered the mark CON-WAY FREIGHT, for transportation and delivery services, in the United States Patent and Trademark

Office under Registration No. 4,286,252, which issued February 5, 2013.

36.     Registration Nos. 2,278,192 and 4,286,252 are each *prima facie* evidence of the validity and Con-way's ownership of the registered marks. The registrations are constructive notice of ownership of Plaintiffs' registered marks, all as provided by Sections 7(b) and 22 of the Federal Trademark Act, 15 U.S.C. §§ 1057(b) and 1072. As Registration No. 2,278,192 has achieved incontestable status under § 15 of the Federal Trademark Act, 15 U.S.C. § 1065, said registration is conclusive evidence of Con-way's exclusive right to use the CON-WAY trademark in commerce. True and correct copies of Registration Nos. 2,278,192 and 4,286,252 are attached as Exhibits D and E respectively, and made a part hereof.

37.     As the first step in its unlawful and unfair trade practices, and notwithstanding Plaintiffs' known and prior exclusive rights in the CON-WAY trademarks, Defendant R&L unfairly capitalized on the reputation and public recognition of, and the goodwill symbolized by, Plaintiffs' CON-WAY trademarks by adopting and commencing use in interstate commerce and the State of Michigan of the identical and confusingly similar trademarks, CON-WAY and CON-WAY FREIGHT, in connection with its efforts to raid and solicit Con-way employees for the purpose of offering them employment opportunities in the field

of transportation and delivery services in direct competition with Con-way and by using the Con-way trademarks in the website "www.conwaylayoff.com".

38.   Defendant R&L's Website invoked the trademark CON-WAY in the title of the Website in a bold and large font.

39.   Defendant R&L's Website shown in Exhibit F used the trademark CON-WAY FREIGHT in the third sentence of the body of text displayed on the Website.

40.   Defendant R&L initially included the Con-way name in the identifying blue font and script as part of the "www.conwaylayoff.com" Website, while not including any reference to Defendant R&L.

41.   The Con-way marks used by Defendant R&L were spurious designations which are substantially indistinguishable from, and are colorable imitations of, and confusingly similar to, Con-way's trademarks; furthermore, Con-way's trademarks as used by Defendant R&L, as set forth herein, so resemble Plaintiffs' marks, as to be likely to induce the belief, contrary to fact, that the marks appearing on the Website were genuine and used with the sponsorship, license and/or approval of Plaintiffs.

42.   The CON-WAY trademarks as used by Defendant R&L are pronounced the same as Plaintiffs' trademarks.

11

43.     The font used by Defendant R&L for the CON-WAY trademarks is identical and confusingly similar to the font used by Plaintiffs for their trademarks.

44.     Defendant R&L's use of the CON-WAY trademarks was likely to cause the public, the LTL transportation services consumers and the employees of the freight shipping industry (including Con-way employees) to believe, contrary to fact, that Defendant R&L's Website is sponsored, licensed and/or otherwise approved by, or are in some way connected or affiliated with Plaintiffs.

45.     Upon information and belief, Defendant R&L had actual knowledge of Con-way's prior use of the CON-WAY trademarks when it began using the identical and confusingly similar marks.

46.     Defendant R&L had constructive knowledge of Con-way's prior use of the CON-WAY trademarks when it began using the identical and confusingly similar marks.

47.     Plaintiffs sent Defendant R&L a cease and desist letter on November 5, 2015, objecting to Defendant R&L's use of the CON-WAY trademarks, a copy of which is attached as Exhibit C.

48.     Defendant R&L did not respond to the cease and desist letter but ultimately removed the Website "www.conwaylayoff.com" on or about November 6, 2015.

49.     Defendant R&L's use of the CON-WAY trademarks in the manner alleged infringes Plaintiffs' registered CON-WAY trademarks under § 32(1) of the Federal Trademark Act, 15 U.S.C. § 1114(1).

50.     As a result of Defendant R&L's infringement, Con-way has suffered damages, both actual and statutory, and is entitled to recover its costs and attorney fees in protecting its trademarks.

**COUNT II**
**VIOLATION OF THE ANTI-CYBERSQUATTING**
**CONSUMER PROTECTION ACT (CYBERPIRACY)**
**15 U.S.C. § 1125(d)(1)(A)**

51.     Plaintiff Con-way Inc. and Plaintiff Con-way Freight incorporate by reference the allegations of all prior paragraphs as if set forth in fully herein.

52.     As a cause of action and ground for relief, Plaintiffs allege a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A).

53.     Defendant R&L has registered and used the Internet domain name, "www.conwaylayoff.com", which contains the CON-WAY trademark owned by Plaintiffs.

54.     Defendant    R&L    has    registered    and    has    used "www.conwaylayoff.com" without Plaintiffs' authorization and with a bad faith intent to profit from Plaintiffs' trademark, in violation of 15 U.S.C. § 1125(d).

55.     The CON-WAY trademark was distinctive at the time Defendant

13

R&L registered "www.conwaylayoff.com" and the CON-WAY trademark remains so today.

56.    The infringing domain name "www.conwaylayoff.com" was confusingly similar to the CON-WAY trademark at the time Defendant R&L registered it and throughout the life of the authorized Website.

57.    The infringing domain name "www.conwaylayoff.com" did not direct or redirect to a Website owned by Con-way, but rather directed or redirected to an authorized website controlled by Defendant R&L, which profited from its use.

58.    On information and belief, Defendant R&L did not believe and reasonably could not have believed its use of "www.conwaylayoff.com" constituted fair use or that it was otherwise lawful.

59.    Defendant R&L's use of the CON-WAY trademark in the manner alleged violates Plaintiffs' trademark under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A).

60.    As a result of Defendant R&L's violations, Con-way has suffered damages, including attorney fees and costs.

## COUNT III
## COMMON LAW UNFAIR COMPETITION

61.    Plaintiff Con-way Inc. and Plaintiff Con-way Freight incorporate by

reference the allegations of all prior paragraphs as if set forth in fully herein.

62.     As a cause of action and ground for relief, Plaintiffs allege that Defendant R&L is engaged in acts of unfair competition under Michigan common law.

63.     Upon information and belief, Defendant R&L systematically used the CON-WAY trademark and induced employees to leave their present employment with Con-way and to accept employment with R&L for the purpose of obtaining confidential and proprietary information of Con-way and for the purpose of crippling and destroying an integral part of Con-way's business organization, and without the purpose of obtaining only the services of particularly gifted or skilled employees.

64.     Defendant R&L's use of the infringing Website targeted all of Con-way's employees and not merely the particularly gifted or skilled.

65.     Defendant R&L's malicious use of the Website and the CON-WAY's trademarks illustrates that R&L's actions were not simple recruiting, but were rather a large-scale effort to target Con-way employees and strip Con-way of a segment of its workforce for the purpose of gaining an unfair competitive advantage without investment or fair compensation.

66.     Upon information and belief, Defendant R&L induced employees to

15

leave the employ of Con-way and join R&L for the purpose of having the employees disclose Con-way's trade secrets and solicit Con-way's customers to leave Con-way and instead do business with R&L.

67.    Such conduct constitutes unfair competition under Michigan common law and has caused Plaintiffs to suffer damages, including attorney fees and costs.

## COUNT IV
## MISAPPROPRIATION OF A TRADE SECRET

68.    Plaintiff Con-way Inc. and Plaintiff Con-way Freight incorporate by reference the allegations of all prior paragraphs as if set forth in fully herein.

69.    While employed by Con-way, Defendants Matthews, Thackray and Langley had access to customer information and cost, financial and pricing data that provided Con-way with a business advantage over competitors and potential competitors that did not have access to this information.

70.    Plaintiffs protected that information by obtaining contractual commitments from employees that require the employees to safeguard Con-way's confidential information in order to prevent its unauthorized access or removal and prohibits the use or disclosure of that information to any unauthorized outside party.  These obligations continue post-employment.

71.    Plaintiffs entered into an Employee Nondisclosure Agreement, which

16

is attached as Exhibit G, with Defendant Matthews, in which he signed and agreed to hold proprietary information, including customer information, pricing data, cost data, financial data and marketing, production, or merchandising systems or plans, in strict confidence and to take all reasonable precautions to protect such proprietary information; not divulge any proprietary information or any information derived therefrom to any third party; not access, view, copy or record any proprietary information unless required in the fulfillment of the employee's current job duties; and not make any use whatsoever at any time of proprietary information except for purposes as described by Plaintiffs to Defendant Matthews.

72.     Plaintiffs entered into an Employee Nondisclosure Agreement, which is attached as Exhibit H, with Defendant Thackray, in which he signed and agreed to hold proprietary information, including customer information, pricing data, cost data, financial data and marketing, production, or merchandising systems or plans, in strict confidence and to take all reasonable precautions to protect such proprietary information; not divulge any proprietary information or any information derived therefrom to any third party; not access, view, copy or record any proprietary information unless required in the fulfillment of the employee's current job duties; and not make any use whatsoever at any time of proprietary information except for purposes as described by Plaintiffs to Defendant Thackray.

17

73.     Plaintiffs entered into an Employee Nondisclosure Agreement, which is attached as Exhibit I, with Defendant Langley, in which she signed and agreed to hold proprietary information, including customer information, pricing data, cost data, financial data and marketing, production, or merchandising systems or plans, in strict confidence and to take all reasonable precautions to protect such proprietary information; not divulge any proprietary information or any information derived therefrom to any third party; not access, view, copy or record any proprietary information unless required in the fulfillment of the employee's current job duties; and not make any use whatsoever at any time of proprietary information except for purposes as described by Plaintiffs to Defendant Langley.

74.     Con-way had a reasonable expectation that the confidential and/or proprietary information the Employee Nondisclosure Agreements protected would continue to provide significant competitive and economic benefit for so long as the information remained secret and unknown to competitors and potential competitors.

75.     Con-way made reasonable efforts to protect the confidential and/or proprietary information from its competitors and potential competitors through the use of the abovementioned Employee Nondisclosure Agreements.

76.     The Individual Defendants had access to Con-way's trade secret

18

information in their positions as Account Executives at Con-way. That information included the confidential customer information for the customers in their respective regions. Such information included pricing, customer complaints regarding performance, customer revenue, shipping routes, total tonnage shipped and individual contact points within the customers' organizations and pricing information.

77.    On or about Friday, December 4, 2015, Defendant Matthews terminated his employment with Con-way.

78.    Within hours of his resignation on Friday, December 4, 2015, Defendant Matthews sent three emails, within a minute's time, to his personal email address, "james.matthews0605@gmail.com". These emails transmitted seventeen customer pricing files that detailed specific confidential pricing information and shipping routes for fourteen Con-way customers.

79.    On or about December 3, 2015, Defendant Thackray terminated his employment with Con-way.

80.    Upon information and belief, Defendant Thackray transferred from his Con-way issued cellular device to a new cellular device, issued by Defendant R&L, his business contacts at Con-way, all of which constitute confidential and proprietary information of Con-way.

81.     On or about Tuesday, November 17, 2015, Defendant Thackray sent an email to his personal email address, "shawn.thackray@gmail.com", containing a spreadsheet that detailed confidential information regarding delivery problems experienced by twenty Con-way customers.

82.     On or about Tuesday, November 24, 2015, Defendant Thackray sent an email to his personal email address, "shawn.thackray@gmail.com", containing yet another file that, upon information and belief, detailed confidential information regarding problems with specific Con-way customers.

83.     On or about Monday, November 9, 2015, Defendant Langley terminated her employment with Con-way.

84.     On or about Wednesday, October 7, 2015, Defendant Langley sent an email to her personal email address, "sbrunner73@yahoo.com", transmitting a customer scoring report, detailing the high value of the customer to Con-way.

85.     On or about Wednesday, October 28, 2015 and Monday, November 2, 2015, Defendant Langley sent two emails to her personal email address, "sbrunner73@yahoo.com", transmitting two customer pricing files that detailed confidential pricing information of Con-way Customers.  These files contained specific pricing details and shipping routes for specific Con-way customers.

86.     Upon information and belief, the trade secret information of Con-way

20

that was misappropriated by Defendants Matthews, Thackray and Langley has been disclosed to and/or used for the benefit of Defendant R&L.

87.    As a result, Defendant R&L, upon information and belief, has now acquired Con-way's protected trade secrets through improper means, having obtained Con-way's trade secrets from Defendants Matthews, Thackray and Langley in violation of their respective Employee Nondisclosure Agreements and statutory obligations.

88.    On November 24, 2015, Con-way notified the President and General Counsel of R&L that the Individual Defendants possessed confidential and proprietary information of Con-way and that R&L's recruitment and hiring of the Individual Defendants appeared to be for the unlawful and improper purpose of detaining Con-way's trade secrets for the purpose of engaging in unlawful and unfair competition.   The letter from counsel for Con-way advised R&L that an immediate response to address the apparent unlawful activity was necessary to avoid legal action.  See November 24, 2015 letter, attached as Exhibit J.  R&L failed to respond to the notice and demands of Con-way.

89.    Defendant R&L was aware that Con-way had Employee Nondisclosure Agreements with Defendants Matthews, Thackray and Langley that protected Con-way's trade secrets.

90. Defendants R&L's, Matthews', Thackray's and Langley's misappropriation of Con-way's trade secrets was willful and malicious.

91. As a result of Defendants R&L's, Matthews', Thackray's and Langley's misappropriation of Con-way's trade secrets, in violation of MCL § 445.1902, *et seq*. Plaintiffs will suffer irreparable harm and/or damages, including attorney costs and fees.

**COUNT V**
**BREACH OF CONTRACT**

92. Plaintiff Con-way Inc. and Plaintiff Con-way Freight incorporate by reference the allegations of all prior paragraphs as if set forth in fully herein.

93. Defendants Matthews, Thackray and Langley each signed Employee Nondisclosure Agreements, pursuant to which they agreed to hold proprietary information, including customer information, pricing data, cost data, financial data and marketing, production, or merchandising systems or plans, in strict confidence and to take all reasonable precautions to protect such proprietary information; not divulge any proprietary information or any information derived therefrom to any third party; not access, view, copy or record any proprietary information unless required in the fulfillment of the employee's current job duties; and not make any use whatsoever at any time of proprietary information except for purposes as directed by Plaintiffs.

22

94.     Defendants Matthews, Thackray and Langley breached these agreements by, intentionally and without authorization, taking confidential information of Con-way with them upon their departure from Con-way and, upon information and belief, sharing it with R&L and using this information for R&L's benefit, and to the detriment of Con-way.

95.     Con-way has been damaged by these breaches.

## COUNT VI
## TORTIOUS INTERFERENCE WITH A CONTRACT

96.     Plaintiff Con-way Inc. and Plaintiff Con-way Freight incorporate by reference the allegations of all prior paragraphs as if set forth in fully herein.

97.     Plaintiffs' employment contracts and Employee Nondisclosure Agreements with its current and former employees protect the legitimate competitive business interests of Con-way by protecting its confidential information and good will, and the value of an assembled workforce.

98.     Plaintiffs had a reasonable expectation that these contractual commitments and these Employee Nondisclosure Agreements would continue to provide significant competitive and economic benefit.

99.     Upon information and belief, Defendant R&L was aware or should have been aware that Con-way had contractual commitments and Employee Nondisclosure Agreements with their current and former employees.

23

100.   Upon information and belief, although Defendant R&L knew or should have known of the potentially beneficial nature of the contractual commitments and the Employee Nondisclosure Agreements Plaintiffs had with their current and former employees, Defendant R&L nonetheless solicited and hired the employees of Con-way through the improper use of the CON-WAY trademarks and for the improper purposes of obtaining Con-way's confidential information, good will, and the benefit of Con-way's employee training and crippling and destroying an integral part of Con-way's business organization.

101.   Upon information and belief, as a result of Defendant R&L's unlawful and improper solicitation and hire of Con-way employees, Defendants Matthews, Thackray and Langley divulged confidential and/or proprietary information to Defendant R&L in breach of their respective contractual obligations to Con-way.

102.   Defendant R&L's solicitation and hire of Con-way's employees and the resulting breach of their contractual obligations was intentional, unjustified, unlawful and/or done with malice.

103.   As a result of Defendant R&L's tortious interference with Con-way's employment contracts, Plaintiffs will suffer irreparable harm and/or damages, including attorney costs and fees.

WHEREFORE, Plaintiff Con-way Inc. and Plaintiff Con-way Freight

respectfully pray the Court grant them the following relief:

(1)    Entry of judgment that:

    (a)    Defendant R&L has infringed Plaintiffs' registered CON-WAY trademarks under § 32(1) of the Federal Trademark Act, 15 U.S.C. § 1114(1);

    (b)    Defendant R&L has violated the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A), with regard to Plaintiffs' trademarks;

    (c)    Defendant R&L has competed unfairly with Plaintiffs under Michigan common law;

    (d)    Defendants R&L, Matthews, Thackray and Langley have misappropriated and/or threatened to misappropriate Plaintiffs' trade secrets under MCL § 445.1903;

    (e)    Defendants Matthews, Thackray and Langley have breached their respective contracts with Plaintiffs; and

    (f)    Defendant R&L has tortiously interfered with Plaintiffs' employment contracts under the common law.

(2)    Plaintiffs be granted a preliminary and permanent injunction as justice requires to present the Defendants unlawful activity and compel return of Conway's intangible assets.

(3)    Plaintiffs be awarded damages, with prejudgment interest added thereon, sufficient to compensate them for Defendant R&L's infringement of Plaintiffs' CON-WAY trademarks, tortious interference with Con-way's contracts and acts of unfair competition.

(4)    Plaintiffs be awarded damages, with prejudgment interest added thereon, sufficient to compensate them for Defendants R&L's, Matthews', Thackray's and Langley's misappropriation of Plaintiffs' trade secrets.

(5)    Plaintiffs be awarded damages, with interest and fees, for the

Individual Defendants' breach of contract.

(6)     Plaintiffs be awarded increased damages in an amount not less than three times the amount of damages found by the jury or assessed by this Court, for Defendant R&L's willful and wanton acts of infringement pursuant to 15 U.S.C. § 1117.

(7)     Pursuant to § 35 of the Federal Trademark Act, 15 U.S.C. § 1117(c)(1)-(2), Plaintiffs be awarded statutory damages in an amount not less than $1,000 and not more than $200,000 for Defendant R&L's use of a counterfeit mark and not more than $2,000,000 per counterfeit mark if the Court finds Defendant R&L's use willful.

(8)     Pursuant to § 35 of the Federal Trademark Act, 15 U.S.C. § 1117(d), Plaintiffs be awarded statutory damages in an amount not less than $1,000 and not more than $100,000 for Defendant R&L's use of the domain name in violation of the Anti-Cybersquatting Consumer Protection Act.

(9)     Should Plaintiffs elect not to receive statutory damages, pursuant to § 35 of the Federal Trademark Act, 15 U.S.C. § 1115, Defendant be directed to pay to Plaintiffs the profits realized by Defendant R&L attributable to its use of the confusingly similar CON-WAY trademarks.

(10)    Defendants be required to pay to Plaintiffs both the costs of this action and, in accordance with § 35 of the Federal Trademark Act, 15 U.S.C. § 1117, the reasonable attorney fees incurred by Plaintiffs.

(11)    Plaintiffs be granted such other, different and additional relief as this Court deems equitable.

## **JURY DEMAND**

Plaintiff XPO CNW, Inc. and Plaintiff XPO Logistics Freight, Inc., by their

counsel, Dykema Gossett, PLLC, hereby demand a trial by jury of all claims.

*Respectfully submitted,*

/s/ Patrick F. Hickey_____
Patrick F. Hickey (P36648)
Robert Hugh Ellis (P72320)
Matthew Dybas (P79983)
Dykema Gossett PLLC
*Attorneys for Plaintiffs*
400 Renaissance Center
Detroit, MI 48243
phickey@dykema.om
rellis@dykema.com
mdybas@dykema.com
(313) 568-6800

February 3, 2016

27

## **CERTIFICATE OF SERVICE**

     I hereby certify that on February 3, 2016, I caused a copy of the foregoing document to be filed with the Clerk of the Court using the Court's ECF e-filing system.

                */s/ Patrick F. Hickey*_____

                Patrick F. Hickey